UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


JASON J. HUBBARD,

        Petitioner,

v.                              Case No. 3:18-cv-696-MMH-JRK

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

        Respondents.

_____


**ORDER**

**I. Status**

Petitioner Jason Hubbard, an inmate of the Florida penal system,
initiated this action on May 29, 2018,[1] by filing a Petition for Writ of Habeas
Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1). In the Petition, Hubbard
challenges a 2005 state court (Duval County, Florida) judgment of conviction
for armed robbery. Hubbard raises two grounds for relief. See Petition at 5-7,
16-18.[2] Respondents have submitted a memorandum in opposition to the
Petition. See Answer in Response (Response; Doc. 20) with exhibits (Resp. Ex.).
Hubbard declined to file a brief in reply. This case is ripe for review.

---

[1] See Houston v. Lack, 487 U.S. 266, 276 (1988) (mailbox rule).
[2] For purposes of reference, the Court will cite the page number assigned
by the Court's electronic docketing system.

## II. Relevant Procedural History

On December 29, 2004, the State of Florida (State) charged Hubbard by way of amended Information with armed robbery (count one) and grand theft auto (count two). Resp. Ex. 1 at 23-24. Following a trial on count one only, a jury found Hubbard guilty of robbery, with a specific finding that he caried a deadly weapon during the commission of the robbery. Id. at 51. On October 12, 2005, the circuit court adjudicated Hubbard to be a habitual violent felony offender (HVFO) and a prison releasee reoffender and sentenced him to a term of incarceration of thirty-five years in prison. Id. at 77-82.

Hubbard appealed to Florida's First District Court of Appeal (First DCA). Id. at 84. In his initial brief, Hubbard argued that the circuit court erred in failing to conduct an adequate inquiry regarding an alleged discovery violation. Resp. Ex. 5. The State filed an answer brief, Resp. Ex. 6, and Hubbard filed a reply brief, Resp. Ex. 7. On December 4, 2006, the First DCA per curiam affirmed Hubbard's conviction and sentence without a written opinion. Resp. Ex. 8. Hubbard then filed a petition for writ of habeas corpus with the First DCA alleging his appellate counsel was deficient for failing to argue sufficiency of the evidence on direct appeal. Resp. Ex. 9. On February 4, 2009, the First DCA denied the petition on the merits. Id.

On August 6, 2007, Hubbard filed a pro se motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850 (Rule 3.850

Motion). Resp. Ex. 10 at 1-33. In the Rule 3.850 Motion, he alleged his counsel was deficient for failing to: (1) object during sentencing when the circuit court imposed a sentence based on facts not in evidence; (2) preserve a sufficiency of the evidence claim for appeal; (3) present exculpatory evidence; (4) present additional exculpatory evidence; (5) file a motion to suppress a photo lineup; (6) file a motion to suppress State witness Kimberly Davis; (7) present evidence in support of his defense; (8) call an expert witness; (9) call a witness; (10) properly investigate the case; (11) interview and call a witness, (12) preserve an issue for appeal; and (13) object to the State presenting evidence he ran from the scene. Id. On September 5, 2007, the circuit court appointed Michael Bossen, Esq., as his attorney. Resp. Ex. 11 at 1-2. Hubbard later moved to proceed pro se, id. at 3-4, which the circuit court permitted, id. at 5-6.[3]

On October 18, 2012, Hubbard filed an amended Rule 3.850 motion, in which he alleged: (1) fundamental error; (2) counsel failed to adequately argue a motion for judgment of acquittal; (3) counsel failed to present exculpatory evidence; (4) counsel failed to object to Kimberly Davis' in-court identification of Hubbard; (5) counsel failed to investigate Davis; (6) counsel failed to preserve an issue for appeal; (7) counsel failed to investigate a videotape; (8) the cumulative effect of counsel's errors prejudiced him; (9) counsel failed to

---

[3] The record reflects that Hubbard switched back and forth between counsel and proceeding pro se during the postconviction proceedings.

object to the verdict form; and (10) counsel failed to depose a witness. Resp. Ex. 12.

Hubbard again amended his motion, filing a Second Amended Rule 3.850 Motion. Resp. Ex. 13. He raised claims of insufficient evidence and fundamental error, as well as claims alleging his counsel was deficient for failing to: (1) object to the circuit court sentencing Hubbard for his conviction for robbery with a weapon; (2) file an adequate motion for judgment of acquittal; (3) present exculpatory evidence; (4) file a motion to suppress; (5) object to a witness' in-court identification of him; (6) properly prepare for trial; (7) preserve an issue for appeal; (8) object to evidence of his flight; (9) object to prosecutorial misconduct; (10) conduct an adequate pre-trial investigation; (11) object to the verdict form; and (12) investigate or depose a witness. Resp. Ex. 13 at 1-62. Hubbard also raised a claim of cumulative error. Id. at 56. On December 5, 2013, Hubbard amended his claim that counsel was deficient for failing to object to the circuit court sentencing Hubbard for robbery with a weapon. Resp. Ex. 14.

On March 21, 2018, Hubbard, with the assistance of counsel, filed an Unopposed Motion to Vacate, Set Aside, Modify and/or Reduce Sentence Imposed (Motion to Vacate). Resp. Ex. 15. In the Motion to Vacate, Hubbard asserted that he substantially assisted the State in obtaining a conviction of an unrelated defendant and that the State was amendable to granting the

Motion to Vacate. Id. On January 24, 2018, Hubbard voluntarily moved to withdraw his postconviction motions, which the circuit court granted. Resp. Ex. 17. The circuit court also granted the Motion to Vacate and resentenced Hubbard to a term of incarceration of twenty years in prison. Resp. Ex. 16. Hubbard did not appeal. On April 13, 2018, Hubbard filed a motion to reduce or modify his new twenty-year term of incarceration, Resp. Ex. 18, which the circuit court denied on May 10, 2018, Resp. Ex. 18.

## III. One-Year Limitations Period

This proceeding was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

## IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016), cert. denied, 137 S. Ct. 2245 (2017). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary

hearing." <u>Schriro</u>, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Hubbard's] claim[s] without further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's

decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

> conclusion in the first instance.'"[4] <u>Titlow</u>, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S.

Ct. 2298 (2017). Also, deferential review under § 2254(d) generally is limited

to the record that was before the state court that adjudicated the claim on the

merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language

in § 2254(d)(1) "requires an examination of the state-court decision at the time

it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for

prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>,

134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a

state court blundered in a manner so 'well understood and comprehended in

existing law' and 'was so lacking in justification' that 'there is no possibility

fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>,

562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet.

<u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were

adjudicated on the merits in the state courts, they must be evaluated under 28

U.S.C. § 2254(d).

---

4 The Eleventh Circuit has described the interaction between §
2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821
F.3d 1270, 1286 n.3 (11th Cir. 2016), <u>cert</u>. <u>denied</u>, 137 S. Ct. 1103 (2017).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'"opportunity to pass upon and correct" alleged violations of its prisoners' federal rights.'" Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d 865 (1995) (per curiam) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To provide the State with the necessary "opportunity," the prisoner must "fairly present" his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim. Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>,[5] <u>supra</u>, at 747–748, 111 S. Ct. 2546; <u>Sykes</u>,[6] <u>supra</u>, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S. Ct. 2546.

---

[5] <u>Coleman v. Thompson</u>, 501 U.S. 722 (1991).
[6] <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).

<u>Martinez v. Ryan</u>, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. <u>Ward v. Hall</u>, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting <u>Carrier</u>, 477 U.S. at 488, 106 S. Ct. 2639).[7] Under the prejudice prong, [a petitioner] must show that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." <u>Id</u>. at 1261 (quoting <u>Carrier</u>, 477 U.S. at 494, 106 S. Ct. 2639).

<u>Wright v. Hopper</u>, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally

---

[7] <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).

> defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." <u>Carrier</u>, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001).

<u>Ward</u>, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." <u>Johnson v. Alabama</u>, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. <u>Schlup</u>, 513 U.S. at 324.

### C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5 (2003) (per

curiam) (citing <u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003), and <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [<u>Strickland</u>,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. <u>Id.</u>, at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u>, at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u>, at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." <u>Id.</u>, at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243,

1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." Strickland, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." Richter, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of Strickland was unreasonable under § 2254(d) is all the more difficult. The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." Id. (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied Strickland's deferential standard," then a federal court may not disturb a state-court decision denying the claim. Richter, - U.S. at -, 131 S. Ct. at 788.

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's

decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

## Grounds One and Two

In Ground One, Hubbard alleges that his trial counsel provided deficient performance when he failed to object to Hubbard being sentenced for a crime not charged or proved at trial, and of which the jury never convicted him. Petition at 5. According to Hubbard, the State charged him with robbery with a firearm and the State only presented evidence that he carried a firearm. <u>Id.</u> However, the verdict form included an interrogatory for not only carrying a firearm, but for carrying a deadly weapon and a weapon. <u>Id.</u> Hubbard asserts that the jury used its "pardon power" to find him guilty of "a lesser included offense" of robbery while carrying a deadly weapon. <u>Id.</u> at 16. Hubbard maintains that due to an erroneous jury instruction, the circuit court determined that he "could not be sentenced to robbery with a deadly weapon as a lesser included offense." <u>Id.</u> To remedy this alleged error, the circuit court, with defense counsel and the State's consent, sentenced Hubbard to robbery with a weapon. <u>Id.</u> Hubbard argues that his counsel should have objected and argued that (1) robbery with a weapon was not charged in the information; (2) the State presented no evidence to support a conviction for robbery with a

weapon; and (3) a firearm is not a weapon under § 790.001(13), Florida Statutes. <u>Id.</u> at 17-18. As a result, Hubbard alleges he was convicted and sentenced for a crime he did not commit. <u>Id.</u> Likewise, in Ground Two, Hubbard asserts that his right to due process under the Fourteenth Amendment was violated "when he was convicted for a crime wholly unsupported by evidence." <u>Id.</u> at 7. For the same reasons he asserts his counsel should have objected, he contends that he is actually innocent of the crime for which he was convicted. <u>Id.</u>

Respondents argue both claims are unexhausted. Response at 8-9, 14. As to Ground One, Respondents contend that this claim is unexhausted because Hubbard abandoned this claim in state court before either the circuit court or the appellate court could rule on the merits. <u>Id.</u> at 8-9. Regarding Ground Two, Respondents assert that Hubbard failed to raise it on direct appeal or in his petition for writ of habeas corpus with the First DCA, and even if it could be raised via a motion for postconviction relief, he abandoned it. <u>Id.</u> at 14. In the Petition, Hubbard recognizes that these claims are unexhausted, but contends that as to Ground One, his failure to exhaust should be excused pursuant to <u>Martinez v. Ryan</u>. <u>Id.</u> at 5. Additionally, he argues that a fundamental miscarriage of justice will occur if the Court does not address the merits of both grounds for relief. <u>Id.</u> at 5, 7.

The Eleventh Circuit has explained the holding of <u>Martinez</u> as follows:

> In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim. 566 U.S. at 8, 13-14, 132 S.Ct. at 1315, 1318. The Supreme Court, however, set strict parameters on the application of this exception. It applies only where (1) state law requires a prisoner to raise ineffective-trial-counsel claims during an initial collateral proceeding and precludes those claims during direct appeal; (2) the prisoner failed to properly raise ineffective-trial-counsel claims during the initial collateral proceeding; (3) the prisoner either did not have counsel or his counsel was ineffective during those initial state collateral proceedings; and (4) failing to excuse the prisoner's procedural default would result in the loss of a "substantial" ineffective-trial-counsel claim. Id. at 14, 132 S.Ct. at 1318; see also Arthur v. Thomas, 739 F.3d 611, 629 (11th Cir. 2014) (setting forth the Martinez requirements).

Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir. 2017). A claim is substantial if it "has some merit." Martinez, 566 U.S. at 14. For purposes of determining whether postconviction counsel was ineffective, a petitioner "must show more than the mere fact they failed to raise potentially meritorious claims; he must show that *no competent counsel*, in the exercise of reasonable professional judgment, would have omitted those claims." Hittson v. GDCP Warden, 759 F.3d 1210, 1263 (11th Cir. 2014) (emphasis in original).

Based on the record available to the Court, Hubbard cannot establish his postconviction counsel was deficient because Hubbard voluntarily agreed, under oath, to withdraw his previously filed motions for postconviction relief.

Resp. Ex. 17. In exchange for withdrawing the motions, Hubbard's original sentence was vacated, and he was given a twenty-year sentence without being adjudicated as an HVFO or prison releasee reoffender. Resp. Exs. 16; 17. Hubbard knowingly raised the instant claims in his postconviction motions but freely determined to abandon them in exchange for a new sentence. Accordingly, Hubbard cannot establish that his postconviction counsel was deficient for failing to raise this claim which counsel did in fact raise but Hubbard voluntarily decided to abandon it. As Hubbard cannot establish ineffective assistance of postconviction counsel, he cannot rely on <u>Martinez</u> to excuse his failure to exhaust the claim in Ground One.

The Court next turns to Hubbard's claim that he is actually innocent. "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." <u>Calderon</u>, 523 U.S. at 559 (quoting <u>Schlup</u>, 513 U.S. at 324). Hubbard has not brought forth any new evidence which was not presented at trial. To the contrary, he bases his arguments on evidence that was presented at trial. As such, he has failed to present a proper claim of actual innocence. <u>See</u> <u>id.</u>; <u>see also</u> <u>Moore v. Frazier</u>, 605 F. App'x 863, 868 (11th Cir. 2015) (finding petitioner's insufficiency of the evidence argument did not constitute actual innocence for purposes of excusing his untimely federal habeas petition). Accordingly, as Hubbard has failed to establish his actual

innocence, he cannot rely on this principle to excuse his failure to exhaust the claims in Grounds One and Two.

The Court notes that simple robbery is a second-degree felony punishable by up to fifteen years in prison. §§ 812.13(2)(c); 775.082(3)(d), Fla. Stats. However, had the circuit court done as Hubbard contends in his motion and sentenced him to simple battery, Hubbard still faced enhanced sentencing pursuant to the HVFO statute. Under Florida's HVFO statute, the second-degree felony would have been punishable for a term of years not exceeding thirty years, with a ten-year minimum mandatory. § 775.084(4)(b), Fla. Stat. Accordingly, even if properly exhausted and assuming his claim had merit, Hubbard would face the possibility of a stiffer sentence than the twenty-year sentence he is currently serving. Hubbard had the opportunity to litigate this issue in state court, but voluntarily declined to do so in return for a lighter sentence, a sentence that could possibly be increased were he to succeed here. Based on this record, the relief sought in the Petition is due to be denied as Hubbard's claims are unexhausted.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hubbard seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hubbard "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.     If Hubbard appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4.     The Clerk of the Court is directed to close this case and terminate any pending motions.

    **DONE AND ORDERED** at Jacksonville, Florida, this 25th day of May, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-8

C:     Jason Hubbard #305285
       Counsel of record